IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
OXFORD DIVISION

JEREMIAHA JOHNSON                                                    PLAINTIFF

V.                                                        NO: 3:23-CV-076-GHD-JMV

DESOTO COUNTY, MISSISSIPPI, et al.                                   DEFENDANTS

## MEMORANDUM OPINION

Presently before the Court is a Motion for Summary Judgment [44] filed by the Defendants Desoto County, Mississippi, Joe Weatherly, Jason Crawford, and Jacob Conerly. Plaintiff Johnson has now voluntarily conceded his claims against Defendants Desoto County, Mississippi and Jacob Conerly. Plaintiff Johnson has responded in opposition to the present motion and upon due consideration of the motion and the applicable authority, the Court hereby grants the Defendants' Motion for Summary Judgment for the remaining Defendants based on qualified immunity [44].

### Factual Background

On September 14, 2022, Sergeant Hunter Garrett of the Desoto County Sheriff's Department was on his routine patrol in Desoto County. During his patrol, at approximately 1:00 a.m., Sergeant Garrett noticed a parked Nissan Altima near a business and decided to check the tag. The tag search showed the tag number was not on file in Mississippi, and after this initial tag check, Garret noticed the Nissan Altima was leaving the business. Garret followed the vehicle and again tried to verify the tag; however, the tag search again showed the tag number was not on file in Mississippi. It was later determined the Plaintiff, Jeremiaha Johnson, was a passenger in the vehicle at this time.

Garrett turned on his blue lights and attempted to stop the vehicle, which slowed down but did not stop. Garrett pursued the vehicle, and the vehicle eventually came to a stop. Garrett then ordered the driver and the Plaintiff to put their hands out of the windows. The Defendants contend the Plaintiff stepped out of the vehicle and yelled at Garrett; however, this is contested by the Plaintiff.

Soon after the vehicle was stopped, Defendant Deputy Conerly, Defendant Deputy Crawford, and Defendant Sergeant Weatherly arrived on the scene. Weatherly exited his vehicle with his canine and began giving commands to both the driver of the vehicle and to the Plaintiff. The driver exited the Nissan Altima with his hands up and walked to the deputies, was handcuffed, and placed into Garrett's patrol vehicle. Weatherly then began ordering the Plaintiff to exit the vehicle on the driver's side with his hands up. At this point Deputy Crawford was armed with a shotgun loaded with rubber pellets, and Deputy Conerly was armed with his pistol.

The Plaintiff moved from the passenger seat in the vehicle into the driver's seat. While being ordered to exit the vehicle, the Plaintiff pressed the brake, started the car, and immediately began driving away. As the Plaintiff was driving away, Deputy Crawford fired his shotgun and the rubber pellets hit the back glass of the vehicle. Immediately following this, Deputy Conerly fired his pistol at the vehicle four times as the Plaintiff drove away.

After the Plaintiff drove away, Defendants Weatherly, Crawford, and Conerly returned to their patrol vehicles and began pursuing the Plaintiff. As the Plaintiff attempted to merge onto the highway, he lost control and drove into a ditch. The Plaintiff then exited the vehicle and began running up a hill. Weatherly immediately deployed his canine to assist in detaining the Plaintiff, and the Plaintiff then stopped running and sat down in the tall grass on the hill. The canine began biting the Plaintiff and Defendants Weatherly, Crawford, and Conerly placed the Plaintiff in

2

handcuffs. After this was done, Defendant Weatherly removed the canine from the Plaintiff's leg. The Deputies on the scene then called for EMS to come and assist in treating the Plaintiff's injuries.

### Standard

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting Fed. R. Civ. P. 56(a)). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a sufficient showing to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S. Ct. 2548.

The party moving for summary judgment bears the initial responsibility of informing the Court of the basis for its motion and identifying those portions of the record it believes demonstrate the absence of a genuine dispute of material fact. *See id.* "An issue of fact is material only if 'its resolution could affect the outcome of the action.'" *Manning v. Chevron Chem. Co., LLC*, 332 F.3d 874, 877 (5th Cir. 2003) (quoting *Wyatt v. Hunt Plywood Co.*, 297 F.3d 405, 408 (5th Cir. 2002)).

The burden then shifts to the nonmovant to "go beyond the pleadings and by . . . affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324, 106 S. Ct. 2548 (internal quotation marks omitted.); *Littlefield v. Forney Indep. Sch Dist.*, 268 F.3d 275, 282 (5th Cir. 2001); *Willis v. Roche Biomedical Labs., Inc.*, 61 F.3d 313, 315 (5th Cir. 1995). The Court "resolve[s] factual controversies in favor of the nonmoving party, but only where there is an actual

3

controversy, that is, when both parties have submitted evidence of contradictory facts." *Antoine v. First Student, Inc.*, 713 F.3d 824, 830 (5th Cir. 2013) (quoting *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005)). "[T]he nonmoving party 'cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence.'" *Hathaway v. Bazany*, 507 F.3d 312, 319 (5th Cir. 2007) (quoting *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007)).

## Discussion

The Plaintiff's Amended Complaint [18] appears to assert claims of excessive force against Defendants Weatherly, Conerly, and Crawford, and further, the Amended Complaint asserts the Defendant Desoto County is liable for the actions of the above-named Defendants due to an official policy or custom and due to the failure to train. The Defendants have asserted in their motion for summary judgment that the individual Defendants, Weatherly, Conerly, and Crawford, are entitled to qualified immunity as to each of the Plaintiff's claims against them. The Defendants further assert in their motion that the Plaintiff cannot establish a cause of action against Desoto County either through the existence of a policy/custom or under a failure to train theory.

The Plaintiff in response to the Defendants' Motion [44] has conceded his claims against Defendant Desoto County and Defendant Deputy Conerly. This leaves pending the Plaintiff's claims of excessive force against Defendants Weatherly and Crawford. As to the Court's analysis of these constitutional violation claims, both Defendant Weatherly and Crawford are seeking summary judgment on the basis of qualified immunity.

"Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Waddell v.*

4

*Voyles*, 2021 WL 1208497, at *4 (N.D. Miss. Mar. 30, 2021) (quoting *Pearson v. Callahan*, 555 U.S. 223, 129 S. Ct. 808, 815, 172 L. Ed. 2d 565 (2009)). "The defense of qualified immunity may be successfully invoked by a police officer 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Id.* (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818-19, 102 S. Ct. 2727, 73 L. Ed. 2d 396 (1982); *Cantu v. Rocha*, 77 F.3d 795, 805-06 (5th Cir. 1996)). "Once a defendant invokes qualified immunity, the burden shifts to the plaintiff to show that the defense is not available." *Kovacic v. Villarreal*, 628 F.3d 209, 211 (5th Cir. 2010).

"To determine whether a public official is entitled to qualified immunity, [courts] decide '(1) whether the facts that the plaintiff has alleged make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.'" *Ramirez v. Martinez*, 716 F.3d 369, 375 (5th Cir. 2013) (quoting *Brown v. Strain*, 663 F.3d 245, 249 (5th Cir. 2011)) (additional citation omitted). Notably, the qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d 322, 326 (5th Cir. 2008)).

Further, factual allegations arising out of events captured on video are viewed "in the light depicted by the videotape." *Scott v. Harris*, 550 U.S. at 381, 127 S.Ct. 1769. "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380, 127 S.Ct. 1769. However, "to the extent that any material fact dispute remains after viewing the facts in light of the available video

evidence, the court should deny summary judgment on grounds of qualified immunity. *" Bagley v. Guillen*, 90 F.4th 799, 800 (5th Cir. 2024).

I.      **Defendant Crawford**

The complaint asserts Defendant Crawford violated the Plaintiff's right to be free from excessive force when Crawford fired a shotgun loaded with rubber pellets at the back window of the Plaintiff's car which caused a wound on his back. The Fourth Amendment confers a right to be free from excessive force during the "seizure" of a person. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). An officer seizes a person when he, "by means of physical force or show of authority, has in some way restrained the liberty of a citizen." See *Flores v. City of Palacios*, 381 F.3d 391, 396 (5th Cir. 2004). In the context of constitutional law, seizures—including certain police uses of force—are regulated by the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 388, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989).

At the first inquiry of the qualified immunity analysis, a plaintiff must present a genuine dispute of material fact whether the official violated their Fourth Amendment right by using excessive force. To demonstrate constitutional injury due to the use of excessive force, a plaintiff must show: (1) the plaintiff suffered a physical injury (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

The parties do not appear to dispute that Plaintiff Johnson suffered an injury. The record presented to the Court demonstrates that a rubber pellet from the shotgun struck the Plaintiff in the back and that there was bleeding as a result. The relevant inquiry in this case, therefore, is whether

Crawford's use of force was clearly excessive and objectively unreasonable. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

"The calculus of reasonableness must embody allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Graham v. Connor*, 490 U.S. 386, 396–97, 109 S.Ct. 1865, 104 L.Ed.2d 443 (1989). "The objective-reasonableness inquiry is fact-intensive, requiring consideration of circumstances such as the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight." *Galvan v. City of San Antonio*, 435 Fed.Appx. 309, 310–11 (5th Cir. 2010). "Officers may consider a suspect's refusal to comply with instructions . . . in assessing whether physical force is needed to effectuate the suspect's compliance." *Deville v. Marcantel*, 567 F.3d 156, 167 (5th Cir. 2009). When dealing with an uncooperative suspect, police act within the scope of objective reasonableness when they "react[] with measured and ascending responses." *Galvan*, 435 Fed.Appx. at 311.

Since the record includes a reliable and sufficiently viewable video of Defendant Crawford firing the non-lethal round into the back window of the vehicle, and quite a period of time leading up to this, the Court must view the facts in the light depicted by the recording of the incident. *Scott v. Harris*, 550 U.S. at 380–81, 127 S.Ct. 1769. It is undisputed Plaintiff Johnson refused to comply with the Defendants' instructions at the time he drove away. The video evidence confirms that the Plaintiff, who was initially in the passenger seat of the vehicle, was ordered to exit through the driver's side door. The Plaintiff moves from the passenger seat to the driver's seat and instead of exiting the vehicle as ordered, presses the brakes, starts the car, and begins to flee. The footage

7

from the incident makes clear the Plaintiff's version of the facts is inaccurate; it is clear Defendant Crawford did not fire the non-lethal rubber round into the window until the Plaintiff started the car and began to drive away. The video directly contradicts the Plaintiff's version that "[Defendant Crawford] fired through the driver's side of the rear window, knowing that a person was still in the car and trying to turn it on." [18] Amended Complaint. The rubber round was not fired until the Plaintiff's vehicle was started and moving, and the Plaintiff has not disputed that the purpose of this non-lethal round was to allow an access point for the canine.

In determining whether a use of force was reasonable, a court must look to the totality of the circumstances, *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012), giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" (the "Graham factors"). Graham v. Connor, 490 U.S. 386, 396 (1989). "The second factor is the most important: [The court] must determine whether [plaintiff] 'posed an immediate threat to the safety of the officer or others.'" *Malbrough v. Stelly*, 814 Fed.App'x 798, 803 (5th Cir. 2020) (per curium) (quoting *Graham*, 490 U.S. at 396).

The facts are clear that the Defendants initiated a traffic stop on the vehicle in which the Plaintiff was initially a passenger. The vehicle did not stop, and the Defendants pursued the vehicle until it came to a stop. At this point, the vehicle and its passengers have been involved in one fleeing situation. The driver of the vehicle is taken into custody at the first stop, and then the Plaintiff, passenger at this time, refuses to exit the vehicle as ordered by the Defendant and moves to the driver's seat and begins the second evasion by flight. At this point Defendant Crawford

8

used a rubber round to break the back glass of the vehicle as to create an entry point for the canine to subdue the Plaintiff. As established, this rubber round caused an injury to the Plaintiff's back.

Each of the *Graham* factors weigh in favor of the use of force described above. The Plaintiff had been involved in two evasions of arrest at the time the non-lethal round was fired, one with indirect involvement as a passenger and one with direct involvement as the driver. Also, "nearly any suspect fleeing in a motor vehicle poses some threat of harm to the public." *Lytle v. Bexar County, Tex.* 560 F.3d 404, 415 (5th Cir. 2009). The second *Graham* factor certainly weighs in favor of the Defendant's use of force as the Plaintiff was beginning to flee in a vehicle when the round was fired. This was prefaced by the Plaintiff actively resisting by refusing to comply with the officers' commands, and all of these considerations weigh in favor of using force. *Baker v. Coburn* 68 F.4th 240, 247 (5th Cir. 2023).

Further, the Court notes the Plaintiff has failed to cite any legal authority to demonstrate Defendant Crawford violated a "clearly established law at the time the challenged conduct occurred." *Bush v. Strain*, 513 F.3d 492, 501 (5th Cir. 2008). Instead, the Plaintiff makes the general contention he had a constitutional right to be free from excessive force and that Defendant Crawford violated that right by shooting a rubber round through his window. Based on all the circumstances surrounding this incident, it was not objectively unreasonable for Defendant Crawford to use non-deadly force by firing a rubber round through the vehicle's window. The Plaintiff, then, has failed to establish that a constitutional right was violated by Defendant Crawford. Therefore, Defendant Crawford is entitled to qualified immunity as the Plaintiff has failed to establish neither an infringement of a clearly established constitutional right nor that the Defendant's actions were objectively unreasonable under the circumstances.

## II.    Defendant Weatherly

The Court next addresses Plaintiff Johnson's claim that Defendant Weatherly violated the Plaintiff's right to be free from excessive force when he released a Desoto County Sheriff's Department canine that bit and injured Johnson's calf. Again, to demonstrate constitutional injury due to the use of excessive force, a plaintiff must show: (1) the plaintiff suffered a physical injury (2) which resulted directly and only from the use of force that was clearly excessive to the need, and (3) the force used was objectively unreasonable. *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (quoting *Williams v. Bramer*, 180 F.3d 699, 703 (5th Cir. 1999)).

The parties do not appear to dispute Plaintiff Johnson suffered an injury from the canine. The record presented to the Court demonstrates the canine bit and latched onto the Plaintiff's leg causing injuries. The relevant inquiry in this case, therefore, is whether Weatherly's use of force was clearly excessive and objectively unreasonable. *Poole v. City of Shreveport*, 691 F.3d 624, 628 (5th Cir. 2012).

Plaintiff Johnson contends the use of the canine to subdue him was unnecessary and excessive since he was already sitting on the ground surrendering when the dog was released. Again, in determining whether a use of force was reasonable, the Court must look to the totality of the circumstances, *Elizondo v. Green*, 671 F.3d 506, 510 (5th Cir. 2012), giving "careful attention to the facts and circumstances of each particular case, including the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest by flight" (the "*Graham* factors"). *Graham v. Connor*, 490 U.S. 386, 396 (1989).

The circumstances leading up to Defendant Weatherly using the canine to subdue the Plaintiff have been clearly described above. Following the first evasion of arrest, during which

the Plaintiff was a passenger in the vehicle, and the second evasion of arrest, during which the Plaintiff was the driver of the vehicle, the Plaintiff then began the third evasion of arrest when he drove off the road, exited the vehicle, and ran away from the vehicle, the road, and the law enforcement officers. It is not perfectly clear from the video when the canine was released from Defendant Weatherly's vehicle; the Plaintiff was either still running away at the time of the canine's release or had just sat down on the grassy hill alongside the road. The canine appeared to bite the Plaintiff for approximately 30-40 seconds while Defendant Weatherly and other officers attempted to subdue and apprehend the Plaintiff.

The Court notes the Plaintiff cites one single case in response to Defendant Weatherly's portion of the motion for summary judgment based on qualified immunity. The cited case is *Cooper v. Brown*, which states that "when no reasonable officer could conclude that a suspect poses an immediate threat to [law enforcement officers] or others,' it is unreasonable to use K-9 force to subdue a suspect who is complying with officer instructions." *Cooper v. Brown*, 844 F.3d 517 (5th Cir. 2016). According to the Plaintiff, a canine was unreasonable and excessive as he posed no threat to the officers and was complying with instructions. While the Court does tend to agree the Plaintiff was no longer attempting to evade arrest at the moment the canine reached him, the Plaintiff seems to ignore the fact that he was moments before involved in a high-speed vehicle pursuit and a brief on-foot evasion. The Fifth Circuit has "repeatedly held that 'measured and ascending' use of force is not excessive when a suspect is resisting arrest – provided the officer ceases the use of force once the suspect is subdued." *Shumpert v. City of Tupelo*, 905 F.3d 310, 323 (5th Cir. 2018) (quoting *Bailey v. Preston*, 702 F. App'x 210, 211 (5th Cir. 2017) (unpublished)); *Poole v. City of Shreveport*, 691 F.3d 624, 629 (5th Cir. 2012).

11

Here, the Plaintiff had been involved in two vehicle evasions and one foot evasion, which obviously meets the standard for resisting and evading arrest. The Plaintiff also had refused to comply with the officers' demands at the initial stop, as he refused to exit the vehicle. Lastly, the Plaintiff began to flee on foot following the second vehicle evasion, and this is when the canine was released. Even if the Plaintiff had sat in the grass moments before the canine was released, Defendant Weatherly would certainly have reason to doubt the sincerity of the Plaintiff's actions given this was his second, arguably third, attempt to flee from the officers. *Escobar v. Montee*, 895 F.3d 387, 395 (5th Cir. 2018). The canine was also removed from the Plaintiff after 30-40 seconds, which appears to be how long it took multiple officers to apprehend the Plaintiff.

Based on all the circumstances discussed above, it was not objectively unreasonable for Defendant Weatherly to use a canine to subdue and assist in the apprehension of the Plaintiff. The Plaintiff has failed to establish that a constitutional right was violated by Defendant Weatherly and failed to establish that Defendant Weatherly's actions were objectively unreasonable. Therefore, Defendant Weatherly is entitled to qualified immunity as to the excessive force claim brought against him.

## Conclusion

For the reasons stated above, the Court finds that the Defendants' Motion for Summary Judgment [44] based on qualified immunity for the remaining Defendants is GRANTED.

An order in accordance with this opinion shall issue this day.

This, the _____ 12th day of August, 2024.

SENIOR U.S. DISTRICT JUDGE

12